**UNITED STATES**

v.

**Airman Albert K. H. PHILLIPPY, FR 174–46–2580 Headquarters, 43d Strategic Wing 1st Strategic Aerospace Division (SAC).**

**ACM 22065.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 26 Sept. 1975.

Decided 12 Oct. 1976.

*sault and Battery,* Sections 60 and 67; *United States v. Burt,* supra; *United States v. Steele,* 43 C.M.R. 845 (A.C.M.R.1971).

Appellate Counsel for the Accused: Colonel Jerry E. Conner, Colonel Robert W. Norris and Captain George L. Squires, USAFR. Appellate Counsel for the United

Before LeTARTE, C. J., EARLY, Senior Judge, and FORAY, J.

### DECISION

LeTARTE, Chief Judge:

Despite his pleas, the accused was convicted of wrongfully transferring heroin, wrongfully attempting to possess heroin and conspiracy to import heroin into a United States territory, in violation of Articles 134, 80 and 81, respectively, of the Uniform Code of Military Justice, 10 U.S.C. §§ 934, 880, 881. The approved sentence extends to dishonorable discharge, total forfeitures, confinement at hard labor for seven years and reduction in grade to airman basic.

Appellate defense counsel have assigned five errors for our consideration. We will address three of these. In the first, they contend:

THE COURT–MARTIAL WAS WITHOUT JURISDICTION TO TRY THE ACCUSED [FOR CONSPIRACY TO IMPORT HEROIN INTO A TERRITORY OF THE UNITED STATES].

We disagree. Counsel have relied upon the decisions in *United States v. Beeker*, 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969); *United States v. LeBlanc*, 19 U.S.C.M.A. 381, 41 C.M.R. 381 (1970); *United States v. Pieragowski*, 19 U.S.C.M.A. 508, 42 C.M.R. 110 (1970); and *United States v. Black*, 24 U.S. C.M.A. 162, 51 C.M.R. 381, 1 M.J. 340 (1976), in support of their contention. In each case, the Court found the offense there in issue was not service-connected.[1]

In *Pieragowski*, the Court held that the civilian nature of the act was "unaffected by any militarily significant circumstance" notwithstanding that the accused had arrived at a military installation in the United States with his illegal cache aboard an aircraft chartered by the military. The Court opined that

---

1. *Beeker, LeBlanc* and *Pieragowski* involved smuggling prohibited drugs into the United States. In *Black*, though the offense was charged as a conspiracy to transfer heroin, the Court reasoned that "the true essence of the appellant's criminal transgression is the conspiracy to import a controlled substance into the United States."

the charter did not transform the aircraft into a military vehicle, and the landing at a military base was a convenience which did not eliminate the civilian character of customs inspection, as evidenced by the inspection of the accused's effects by regular civilian customs inspectors.

Similarly, in *Black*, supra, service-connection was found lacking where application of the "*O'Callahan* standard and the *Relford* criteria"[2] indicated the offense was not "specifically related to the military services."

■ In the case before us, the conspiracy was formulated and the overt acts committed off base.[3] Further, the specification in issue does not allege that the object of the conspiracy was to import the drugs into a military installation; instead, it avers that heroin was to be imported into a United States territory. Therefore, if service-connection is to be found, it must be on the basis that the plan *contemplated* the importation of heroin into a military base aboard a military vehicle. In this respect, we are satisfied that the exercise of military jurisdiction over a conspiracy to commit a criminal offense is proper where the intended crime, the object of the conspiracy, is service-connected. *United States v. Harris*, 18 U.S.C.M.A. 596, 40 C.M.R. 308 (1969).

Here, unlike the circumstances in *Piera-gowski*, supra, the landing at a military base would not have been a mere convenience. Rather, the Air Force base was the planned, *ultimate* destination of the prohibited substance. This factor, together with other relevant circumstances present in this case, leads us to conclude that the following elements of the crime meet the *Relford* criteria for determining service-connection:

1. The conceiving of the plan while on base.
2. The military status of the co-conspirator and of the intended carrier, Hunter.
3. The *direct* connection between Hunter's military duties and the intended crime.
4. The flouting of military authority.
5. The threat posed to military personnel and the military community.

That the Air Force had an overriding, though not exclusive, interest in the conspiracy is evident. *United States v. McCarthy, supra.* The use of military aircraft to transport controlled substances is an outstanding example of defiance of military authority. And the fact that such substances are intended for dissemination among the inhabitants of a military installation is ample evidence of the potential threat to the military function. Under such circumstances, service-connection is clearly evident. We find, therefore, that the military properly exercised its jurisdiction over the offense in issue.

Appellate defense counsel have also alleged:

THE MILITARY JUDGE ERRED BY ADMITTING PROS. EXS. 11

---

**2.** *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). The purpose of *O'Callahan* is to insure indictment and trial by jury for service personnel except when the offense is clearly "service-connected" or is not triable before a federal or state court. The latter exception may apply where a serviceman commits an offense in a foreign country. *United States v. Newvine*, 23 U.S.C.M.A. 208, 48 C.M.R. 960 (1974). *Relford* sets out 12 criteria by which service-connection may be measured. These criteria must always be thoroughly analyzed in order to resolve the service-connection issue in cases tried by court-martial. *United States v. Moore*, 1 M.J. 448 (16 July 1976); *United States v. Hedlund*, 2 M.J. 11 (17 Sept.

1976); *United States v. McCarthy*, 2 M.J. 26 (24 Sept. 1976).

**3.** While at Andersen Air Force Base, Guam, the accused asked Sergeant Hunter, a KC–135 aircraft crew chief, to obtain heroin in Thailand and return it to the base aboard his aircraft. Hunter, however, was not a true conspirator for he was acting as an informer for the Office of Special Investigations (OSI). The co-conspirator was another serviceman stationed in Thailand who agreed to purchase the drug with currency furnished by the accused through Hunter. However, the co-conspirator was not physically present on a military installation when he agreed to the plan. Moreover, all of the overt acts alleged, sending the currency to Thailand, purchasing the drug and transferring it to Hunter, occurred in civilian communities.

THROUGH 14 INTO EVIDENCE SINCE HE DENIED A DEFENSE MOTION TO HAVE THE LABORATORY ANALYST PRESENT AT TRIAL FOR CROSS–EXAMINATION REGARDING THOSE EXHIBITS.

We agree. At trial, the exhibits in issue were admitted in evidence over defense objection. They include two laboratory reports identifying, as heroin, the substance involved in the transfer offense and the substance purchased by the co-conspirator in Thailand. In support of his objection, individual defense counsel requested that the person who conducted the chemical analyses be called to permit cross-examination as to his qualifications as an expert and the "competency of his identification process." The military judge denied the request on the basis that it was not timely presented, that is, the request had not been submitted between the dates charges were referred to trial and the court was convened.

We are not aware of any military case which holds that the defense failure to request an essential witness until trial constitutes a waiver of the accused's right to confront and examine such witness. The following language, however, is apropos:

> The necessities for having a witness present often do not arise until the trial has proceeded well along toward finality and the touchstone for untimeliness should be whether the request is delayed unnecessarily until such a time as to interfere with the orderly prosecution of the case. Even then, if good cause is shown for the delay, a continuance should be granted to permit the evidence to be produced.

*United States v. Hawkins*, 6 U.S.C.M.A. 135, 19 C.M.R. 261, 268 (1955).

■ The right of an accused to compel the attendance of witnesses in his behalf depends upon the relevancy and materiality of the expected testimony; but once materiality has been established, the Government must either produce the witness or abate the proceedings. *United States v. Carpenter*, 24 U.S.C.M.A. 210, 51 C.M.R.

507, 1 M.J. 384 (1976), and cases cited therein. And in the present case, there is no question but that the accused had the absolute right to examine the person who conducted the chemical analyses of the substance in issue. *United States v. Miller*, 23 U.S.C.M.A. 247, 49 C.M.R. 380 (1974).

■ Furthermore, we find that the military judge's failure to require that the prosecution produce the required witness constituted a clear abuse of discretion. Assuming the defense request was not timely submitted, this factor alone did not provide a basis for summarily denying the defense motion. We can perceive at least two circumstances that should have been pursued by the military judge before arriving at his decision: (1) whether any prior requests for the witness had been made and (2) whether granting the request would have significantly interfered with the orderly prosecution of the case.

As to the first circumstance, we note that the defense had earlier submitted a request, which was denied, that the witness be made available for cross-examination at the pretrial investigation. Although this request certainly did not satisfy the Manual requirements for requesting the attendance of the witness at trial,[4] it should have acted as a warning to the prosecution that the same request might be forthcoming at trial.

Concerning the latter circumstance, the record of trial reveals that the defense request for the witness was submitted before noon on 20 September 1975. Shortly thereafter, court was recessed until 22 September, and the Government did not rest its case until midafternoon on 25 September. It is therefore likely that the witness could have been summoned without disrupting the trial proceedings.

For the reasons stated, we conclude that the military judge's refusal to compel the Government to call the requested witness resulted in a denial of the accused's right to confront an essential witness against him. *United States v. Howard*, 50 C.M.R. 797 (A.C.M.R.1975).

---

4. Manual for Courts-Martial, 1969 (Rev.), paragraph 115.

The findings of guilty of Charge I and its specification are incorrect in law and are hereby set aside. The findings of guilty of Charges II and III and their specifications,[5] are affirmed.

A combined rehearing is ordered. Manual for Courts-Martial, supra, paragraphs 81*b* (3) and 92*a*.

EARLY, Senior Judge, and FORAY, Judge, concur.

---

5. The results of the chemical analysis of the substance purchased by the co-conspirator in Thailand were not essential in proof of the conspiracy to import heroin or the attempt to possess heroin offenses. This evidence merely provided a measure of corroboration to Hunter's testimony.