UNITED STATES

v.

**Tommie QUALLS, 500 62 1516, Airman Apprentice (E-2), U. S. Navy.**

**NCM 79 0642.**

U. S. Navy Court of Military Review.

Sentence Adjudged 24 March 1978.

Decided 29 April 1980.

Capt. E. A. Burnette, USMC, Appellate Defense Counsel.

Lt Joseph G. Van Winkle, JAGC, USNR, Appellate Government Counsel.

Before BAUM, Senior Judge, and SANDERS and MICHEL, JJ.

SANDERS, Judge.

At a special court-martial tried by military judge alone, appellant, contrary to his pleas, was convicted of willfully disobeying the command of his superior commissioned officer in violation of Article 90, Uniform Code of Military Justice (UCMJ), 10 U.S. C. § 890; willfully disobeying the order of his superior petty officer in violation of Article 91, 10 U.S.C. § 891, UCMJ, and three times being disrespectful toward his superior petty officer in violation of Article 91, UCMJ; three times failing to obey a lawful order in violation of Article 92, 10 U.S.C. § 892, UCMJ; and wrongfully communicating a threat in violation of Article 134, UCMJ, 10 U.S.C. § 934. A sentence to confinement at hard labor for 60 days, forfeiture of $200.00 pay per month for two months, reduction to pay grade E–1 and a bad-conduct discharge was approved by the convening and supervisory authorities.

Appellant has assigned the following errors:

## I

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT IN DENYING THE WITNESS REQUEST FOR AMSC REYNOLDS.

## II

IT WAS ERROR FOR THE COMMANDING OFFICER TO TAKE THE CONVENING AUTHORITY'S ACTION IN THIS CASE.

## III

APPELLANT DID NOT RECEIVE A COPY OF THE RECORD OF TRIAL BEFORE THE CONVENING AUTHORITY TOOK HIS ACTION.

We find merit in the first assignment only.

This trial began on 2 February 1978 at which time appellant announced that he would represent himself. Because he was in pretrial confinement special arrangements were made for him to interview potential witnesses, which he did on 3, 4, 6, 7 and 8 February. At a second session of the trial held on 9 February the military judge asked appellant whom he might yet want to interview. Appellant did not mention AMSC Reynolds. On the same day defense counsel submitted a request for two civilian witnesses to the convening authority. In the meanwhile appellant had requested individual military counsel; and at a third session of the trial held on 14 February the military judge was told of that counsel's availability during the period 21–23 March. The case was therefore rescheduled for 22 March. Individual military counsel arrived on 18 March.

On 21 March 1978 the individual military counsel requested that the convening authority make Chief Reynolds available to testify. (Appellate Exhibit XV). Counsel represented that, in respect to the specification under Charge I, Chief Reynolds would testify that when Lieutenant Morris issued his order to "get out of my office" he did not directly address appellant. Additionally, it was alleged that, in respect to Charge II, specification 5, Chief Reynolds was in a position to see any gestures which appellant might have made and that he made no obscene gesture toward AQCS Stultz. This request was renewed at the fourth session of the trial on 22 March; however, the Military Judge denied the request for lack of timeliness.

■■■ An accused has the right to compel the personal attendance of a witness who, in the belief of the accused and his counsel, may offer proof to negate the Government's evidence or to support the defense. U.S.Const. Amend. VI; Article 46, 10 U.S.C. § 846, UCMJ; *United States v. Iturralde-Aponte,* 1 M.J. 196 (C.M.A. 1975). This right is not absolute, however, and the implementation thereof is left to the sound discretion of the person ruling on the request for the witness after due consideration of all relevant factors. *United States v. Tangpuz,* 5 M.J. 426 (C.M.A.1978). While the timeliness of the request is a legitimate factor for consideration, mere untimeliness is not a ground for the request's denial.

> [T]he touchstone for untimeliness should be whether the request is delayed unnecessarily until such a time as to interfere with the orderly prosecution of the case. Even then, if good cause is shown for the delay, a continuance should be granted to permit the evidence to be produced.

*United States v. Hawkins,* 6 U.S.C.M.A. 135, 142, 19 C.M.R. 261, 268 (1955). *See also United States v. Phillippy,* 2 M.J. 297 (A.F. C.M.R.1976).

■■■ Appellant's request for the presence of AMSC Reynolds established on its face the materiality of the witness' testimony. Given the issues framed by the request, there was a reasonable likelihood that the evidence to be offered by Chief Reynolds would affect the outcome of the trial. *United States v. Hampton,* 7 M.J. 284 (C.M. A.1979).

Although Chief Reynolds had been transferred from the convening authority's com-

mand to a squadron operating off the coast of Florida, there was a possibility that he was at Cecil Field, Florida, or even at Naval Air Station, Oceana, the situs of the trial. (R. 60). It is also noted that the military judge heard appellant's request late on the morning of 22 March 1978, (R. 43), and the trial on the merits was not completed until the early afternoon of 24 March. (R. 317). In our opinion it was error for the military judge to deny precipitously appellant's request for this witness without any determination as to whether delay to obtain Chief Reynolds' attendance would have unduly interfered with the natural and orderly progress of the trial.

An improper denial of a request for a defense witness is not an automatic ground for reversal of an otherwise valid conviction, however, where it does not appear that the denial resulted in a fair risk of prejudice to appellant. *United States v. Feeley*, 47 C.M.R. 581, 585 (N.C.M.R.1973). Here, the specification under Charge I alleges that appellant willfully disobeyed Lieutenant Morris' command to get out of his office. Appellant represented that AMSC Reynolds would have testified that Lieutenant Morris did not directly address the appellant. This testimony would have been relevant had there been some substantial question whether Lieutenant Morris' command was directed to appellant or to one of the two other persons in the room, Chief Reynolds and YN2 James, or whether appellant understood the command to have been directed to him. Petty Officer James testified that Lieutenant Morris three times told appellant to leave the office, (R. 143–4); appellant's own testimony is most revealing:

> Petty Officer Second Class James was there and I asked Chief Reynolds to go with me because he was now my new division chief. I asked Petty Officer James how to put the CO and a couple other people on report. At that time Lieutenant Morris came in and I heard him say, "You don't know what you're doing." I said, "I wasn't talking to you." Then Petty Officer James tried to say

something then he was saying something, I don't know what. I was trying to make out what she was saying and I said, "May I have your name and social security number?" He said, "Get out of my office." So I looked at him and he said, "Get out of my office." and pointed at me. So I stepped outside the door and I said, "Petty Officer James, can I have your name and social security number for a witness?" She said, "I don't want to get mixed up in it."

(R. 248). While on cross examination, (R. 267–71), appellant attempted to bolster the position that he did not understand that Lieutenant Morris' command was directed toward him, the totality of the testimony is such that Chief Reynolds' proffered evidence could not reasonably have changed the verdict on this charge and specification.

The testimony bearing on Charge II, specification 5, on the other hand, is in irreconcilable conflict. Simply put, AQCS Stultz testified that appellant made an obscene gesture toward him, (R. 71), and appellant testified that he did not. (R. 252). Had AMSC Reynolds been present at trial and testified as it was represented that he would the military judge's decision on this specification could well have been in appellant's favor. Accordingly, the finding of guilty of specification 5 of Charge II must be set aside.

It was not error for appellant's commanding officer to take the convening authority's action in this case. His two letters to the military magistrate and his appearance at one of the magistrate hearings reflect a commendable attention to his official command functions rather than a disqualifying personal interest in appellant's case. *United States v. Cansdale*, 7 M.J. 143 (C.M.A.1979); *United States v. Conn*, 6 M.J. 351 (C.M.A.1979); *United States v. Reed*, 2 M.J. 64 (C.M.A.1976). Similarly, we will not draw any adverse inference from the commanding officer's haste in taking action on the record. In the absence of evidence to the contrary, his action is presumed regular and implies that he has read the record. *United States v. Quarles*, 50 C.M.R. 514 (N.C.M.R.1975).

■ The government's failure to give appellant a copy of the record of proceedings as soon as it was authenticated, so that he could take any action he thought expedient before the convening authority took his action, was error. Article 54c, UCMJ, 10 U.S.C. § 854(c); *United States v. Cruz-Rijos,* 1 M.J. 429 (C.M.A.1976). The supervisory authority's staff judge advocate recognized this discrepancy, submitted a copy of the record to appellant's detailed counsel and asked for comments. Counsel responded by calling appellant's excellent post-trial record to the attention of the supervisory authority. That officer considered the contents of counsel's letter before taking his action and so have we. Under these circumstances appellant was not prejudiced by the convening authority's premature action. *United States v. Stidman,* No. 79 1749 (NCMR 14 February 1980) (unpublished).

Accordingly, the finding of guilty of specification 5, Charge II is set aside and the specification ordered dismissed. The remaining findings are affirmed. The sentence as approved on review below is reassessed, found appropriate for the remaining offenses, and affirmed.

Senior Judge BAUM and Judge MICHEL concurs.