UNITED STATES, Appellee,

v.

Private First Class Jyome–Vanar R. FORD, 434–23–5324, United States Army, Appellant.

ACMR 8801131.

U.S. Army Court of Military Review.

15 Sept. 1989.

For appellant: Lieutenant Colonel Russell S. Estey, J.A.G.C., Captain Pamela J. Dominisse, J.A.G.C. (on brief).

For appellee: Colonel Norman G. Cooper, J.A.G.C., Lieutenant Colonel Gary F. Roberson, J.A.G.C., Lieutenant Colonel Daniel J. Dell'Orto, J.A.G.C., Captain James K. Reed, J.A.G.C. (on brief).

Before KANE, GILLEY and GIUNTINI, Appellate Military Judges.

## OPINION OF THE COURT

GILLEY, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial, consisting of officers, of two assaults with a means likely to inflict grievous bodily harm, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 (1984). The convening authority approved the sentence of a bad-conduct discharge, confinement for one year, forfeiture of $300.00 pay per month for twelve months, and reduction to the grade of Private E1.

The appellant contends, correctly we find, that the military judge abused his discretion to his substantial prejudice by denying a defense request for a witness to testify on the merits concerning one of the assaults. The appellant testified that the victim was the leader of a group of Korean troublemakers who led earlier "attacks" against American soldiers. According to the appellant's account, the victim threw a two-to-three-pound used Korean charcoal brick, called a yonton, at him. The yonton hit him in the head and he went inside the "Flame Club" to clean up. The appellant was concerned for the safety of his intoxicated friend, who was a fellow soldier. Because of concern for the safety of his friend, the appellant left the Flame Club looking for him. Before leaving that establishment, the appellant opened and carried with him a butterfly knife that he had found in the street outside. He brandished the open knife to help clear a path through the mob outside. At the door of the Flame Club, he saw the victim again in the forefront of the crowd in the street and they were "overpowering and everything." At that point the appellant slashed with the knife, not specifically intending to cut the victim. Thus, whether credible or not, the appellant's testimony raised the issues of self-defense and defense of another as to the first alleged assault.

The victim testified that he had never been in a fight before and had not been told before this incident not to return to the Flame Club because he was a troublemaker. The trial defense counsel belatedly discovered, on the day before the trial, a Criminal Investigation Command Agent Activity Summary describing an interview with a Mr. Cha, an employee at the Flame Club. Mr. Cha stated that the Korean males involved in this incident were "known, not by name, but as young troublemakers and the Flame Club discourages them from coming there because they always caused trouble." He reportedly also said that on the night in question, those Koreans were "agitating" the situation. He also corroborated the appellant's account of the events leading up to the cutting of the victim. Mr. Cha had been interviewed twice by the trial defense counsel, but made no direct identification of the victim. No photographs were used at those interviews.

The trial defense counsel moved for a continuance of one day to obtain Mr. Cha as a witness. Counsel cited three reasons

for the request: to provide reputation testimony regarding the victim, to impeach the victim's testimony that he had never been told before the incident not to return to the Flame Club because of "troublemaking," and to corroborate the appellant's testimony about the events leading up to the first cutting of the victim.

The military judge denied the motion because the "evidence which you've offered is at best, uncertain" since it was not clear that Mr. Cha could identify the victim; the request was untimely; and the probative value would be slight, "outweighed by the risk of confusing or distracting the court members in determining findings in this case." The military judge noted that the appellant already knew the propensities of the victim because the victim had thrown the yonton at him. Though superficially dispositive, that observation does not answer the question of whether the victim and his associates, as "trouble-makers," posed a continuing threat to the safety of the appellant and his friend. Concern with that question could be the basis for a reasonable belief by the appellant that he had to wield the knife to defend himself and to reach and defend his disabled friend. Of course, to convict, the evidence must prove beyond a reasonable doubt that the appellant was not acting in self-defense or the defense of another. A court member's questions manifest that the matters Mr. Cha probably would testify to were important on these issues: "Did Mr. Kim [the victim] or his friends block the exit doors?" "Did Mr. Kim and his friends pose a threat or interfere with PFC Ford leaving the bar?"

"Each party is entitled to the production of any witness whose testimony on a matter in issue on the merits or on an interlocutory question would be relevant and necessary." Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 703(b)(1) [hereinafter R.C.M.]. The Court of Military Appeals has noted several relevant factors regarding when an accused would be entitled to the personal attendance of a witness: the nature of the issues and importance of the requested witness to those issues, whether the witness was desired on the merits, whether the witness' testimony would be merely cumulative, and the availability of an alternative. Mr. Cha's testimony was important and relevant on the issue of self-defense; his testimony was requested on the merits, would not be cumulative, and would be the best evidence available on these issues. In sum, Mr. Cha's testimony would pertain to the core of the accused's defense. *See United States v. Thorton*, 24 C.M.R. 256, 260 (C.M.A.1957). We cannot say beyond a reasonable doubt that Mr. Cha's testimony would not have resulted in a reasonable doubt as to whether the appellant permissibly acted in self-defense or in defense of another. *See United States v. Lucas*, 5 M.J. 167, 172 (C.M.A.1978); *United States v. Qualls*, 9 M.J. 662 (N.C.M.R.1980).

We find that Mr. Cha's testimony probably would have been probative on these issues central to the defenses presented. That reality weighs heavily with us as we evaluate the significance of not knowing that Mr. Kim would identify the victim. That possibility, however, cannot negate the need to hear testimony on the center of gravity of the accused's case when a matter in defense has been raised.

■ Regarding untimely requests for witnesses, denial of a continuance to obtain the witness should be avoided for good cause shown. R.C.M. 703(c)(2)(C). Not to grant the request in this case was an abuse of discretion. The trial defense counsel was heavily engaged in other significant cases at that time and sought to have the witness at trial upon realizing his potential importance. The delay would have been only one of a few days and the witness assuredly would have been found in that area. Rulings by the military judge cannot permissibly make effective assistance of counsel impossible.

These problems do not arise with respect to the second cutting of the victim. Once the victim had been cut on the face, he fled. The appellant chased him. When the victim fell down on the street, the appellant stabbed him in both sides.

In the interest of judicial economy, we will dismiss Charge I and its Specification rather than authorize a rehearing on it.

The findings of guilty of Charge I and its Specification are set aside and Charge I and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for nine months, forfeiture of $300.00 pay per month for nine months, and reduction to the grade of Private E1.

Senior Judge KANE and Judge GIUNTINI concur.