# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, K.M. MCDONALD, D.C. KING**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**DAVID MONTALVO III**
**LANCE CORPORAL (E-3), U.S. MARINE CORPS**

**NMCCA 201400241**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 31 January 2014.
**Military Judge:** LtCol C.J. Thielemann, USMC.
**Convening Authority:** Commanding General, 1st Marine Division (Rein), Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation:** Maj V.G. Laratta, USMC.
**For Appellant:** James S. Trieschmann, Jr., Esq.; LT Christopher McMahon, JAGC, USN.
**For Appellee:** LT James Belforti, JAGC, USN.

**27 May 2015**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.

KING, Judge:

A general court-martial consisting of officer and enlisted members convicted the appellant, contrary to his pleas, of two specifications of rape in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. The members sentenced the appellant to be reduced to pay grade E-1, confinement for nine

years, and a dishonorable discharge.  The convening authority approved the sentence as adjudged.

The appellant now raises two assignments of error[1]: (1) the military judge erred by denying his request to continue his trial and (2) the appellant was denied his Sixth Amendment right to counsel in the post-trial phase of his court-martial.

After carefully considering the record of trial, the parties' briefs, and oral argument, we find merit in the first assignment of error, our action on which moots the second assignment of error.[2]

## Background

VAM was twenty-two years old at the time of the incident. Her nineteen-year-old friend and coworker, Ms. B, invited VAM to stay the night at her house on 4 October 2012 and be introduced to Ms. B's boyfriend, Lance Corporal (LCpl) C, who lived in a

---

[1] I. WHETHER THE MILITARY JUDGE ERRED IN LIMITING LCPL MONTALVO'S CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE BY DENYING A REQUEST FOUR DAYS BEFORE TRIAL FOR A CONTINUANCE TO INVESTIGATE NEWLY DISCOVERED INFORMATION WHEN SUCH INFORMATION WAS RECEIVED LATE DUE TO GOVERNMENT'S FAILURE TO TIMELY COMPLY WITH THE RULES OF DISCOVERY AND THE DEFENSE WAS OTHERWISE INCAPABLE OF DISCOVERING THIS INFORMATION BECAUSE THEY WERE PROHIBITED FROM QUESTIONING THE ALLEGED VICTIM.

II. WHETHER LCPL MONTALVO WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN THE POST-TRIAL PHASE OF HIS COURT-MARTIAL WHEN DEFENSE COUNSEL FAILED TO REQUEST DEFERMENT OF CONFINEMENT AND DEFERMENT IN REDUCTION OF RANK DESPITE THE FACT THAT LCPL MONTALVO SPECIFICALLY REQUESTED THAT THEY DO SO.

[2] The court also specified the following issues:

I. IF THE COURT WERE TO FIND THAT THE MILITARY JUDGE ABUSED HIS DISCRETION IN DENYING THE TRIAL DFENSE COUNSEL'S CONTINUANCE REQUEST, IS THE APPELLANT ENTITLED TO RELIEF ONLY IF WE ALSO FIND THE ERROR MATERIALLY PREJUDICED A SUBSTANTIAL RIGHT OF THE APPELLANT'S?

Ia: IF YES, WHAT, IF ANY, SPECIFIC MATERIAL PREJUDICE TO A SUBSTANTIAL RIGHT DID THE APPELLANT SUFFER?

II. ASSUMING THE INFORMATION SPECIFICALLY REQUESTED BY THE DEFENSE AND SUBPOENED FROM AT&T DOES NOT QUALIFY AS *BRADY* MATERIAL, WERE THE APPELLANT'S DISCOVERY RIGHTS UNDER ARTICLE 46, UCMJ, AND RULE FOR COURTS-MARTIAL 701, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) VIOLATED?

IIa: IF YES, DOES THE APPELLANT HAVE THE BURDEN TO IDENTIFY MATERIAL PREJUDICE TO A SUBSTANTIAL RIGHT, OR MUST THE GOVERNMENT SHOW THAT THE NONDISCLOSURE WAS HARMELSS BEYOND A REASONABLE DOUBT, AND HAS THE RESPONSIBLE PARTY MET THEIR BURDEN?

barracks located on Camp Pendleton.  At around 2200, VAM and Ms. B arrived at LCpl C's barracks and found LCpl C in the barracks room of the appellant, where the two Marines were playing videogames and drinking beer.  According to VAM, the four of them sat in the room and socialized.  A few hours later, VAM became bored and told Ms. B that she was ready to leave.  The Marines escorted them to their car, where VAM testified that while hugging her goodbye, the appellant groped her buttocks.  Ms. B and VAM then returned to Ms. B's home.

At approximately 0230, Ms. B received a text from LCpl C asking that she return to the barracks.  When informed that Ms. B planned to return, VAM decided to go with her because she was "uncomfortable with her going alone because it was so late at night."[3]  Upon arriving back at the appellant's barracks room, VAM noticed the appellant was even more intoxicated, so much so that he was unable to stand without assistance or walk without staggering.  Shortly after arriving, Ms. B and LCpl C departed for LCpl C's room, leaving VAM and the appellant alone in the appellant's room.

VAM testified that, at approximately 0300, while she was helping the appellant look for his phone charger, the appellant moved behind her and began removing her clothing.  Ignoring her request to stop, the appellant pushed VAM backwards onto the twin bed and proceeded to engage in oral, vaginal, and anal intercourse with her over the next three hours.  Once the assault ended, VAM testified that she got dressed and moved to the spare bed where she lay awake until approximately 0630 when another Marine knocked on the appellant's door.  Once the appellant awoke, he picked up the beer bottles in his room and departed the room with VAM.  VAM testified that she and the appellant told each other to "have a nice day" and went their separate ways.

At around 1300 on 5 October 2012, VAM and Ms. B went to work, where VAM's aunt also worked.  VAM testified that she had visible bruising on her arm and claims she was concerned that her family would see it, discover that she was assaulted, and react negatively.  After speaking to several people at her work, VAM finally decided to report her allegations, called her parents, and went to the hospital.  A subsequent exam indicated injuries to VAM's vagina and anus consistent with sexual activity and the appellant's DNA was discovered on VAM's body.

---

[3] Record at 654.

3

The DNA from a separate male was also discovered in VAM's underwear, although VAM testified that her most recent sexual activity with that male was several months prior to the assault.

VAM declined to appear at the Article 32, UCMJ, hearing, and the defense was unable to interview her before the trial.[4] Defense requests to depose VAM were denied by the convening authority and the military judge. The case was referred to a general court-martial on 26 June 2013, and trial was set for 21 October 2013. However, on 8 October 2013 the military judge granted a continuance until 17 January 2013 due to the unavailability of a defense witness.

**Second Continuance Request**

On or about 18 December 2013, the defense realized that the Government had failed to turn over a portion of the investigative report containing the results of a search of VAM's cellular telephone. The defense contacted the trial counsel, who immediately corrected the inadvertent nondisclosure. Once the information was received, the defense noticed discrepancies between VAM's statements to investigators and the data pulled from her cellular phone, indicating that evidence may have been deleted from the cellular phone. Therefore, the defense immediately requested that the Government subpoena VAM's "phone records and text message records" during the relevant time periods. The Government agreed and served that subpoena on AT&T the following day.

Trial was set to commence on 27 January 2014. However, since AT&T had yet to comply with the subpoena, on 22 January 2014 the defense filed a motion to continue the trial until the subpoenaed information had been provided. The next day, the trial counsel provided the defense with a copy of VAM's cellular phone bill (bill) covering the relevant time frame as a substitute for the information subpoenaed from AT&T. The defense discovered discrepancies between the newly provided bill and the previously provided discovery. Additionally, AT&T informed the defense counsel that the subpoenaed information would provide more detailed information than the phone bill, including a list of all text messages sent or received.

At an Article 39(a), UCMJ, hearing held on 24 January 2013, the defense informed the military judge of the status of the

_____

[4] The record indicates that initial defense requests to interview VAM were denied and a third attempt was unsuccessful due to scheduling issues.

4

discovery request and also pointed out that the recently provided bill indicated that beginning at about 1900 and continuing until just minutes before VAM claims the assault commenced, VAM texted back and forth 86 times to an individual with a phone number containing a 404 area code.[5]  This information was deleted from VAM's phone prior to NCIS collecting the phone data, and the defense was unsuccessful in ascertaining the identity of this person.[6]  Since the defense had been provided the information only hours earlier and the identity of this person and the content of the texts sent moments before an assault could produce relevant information, the defense added these justifications to its request for a continuance.

In the ensuing colloquy, the military judge questioned the importance of the text messages, asking the civilian defense counsel, "why is any of the content of the text messages really necessary for a fundamentally fair trial for [the appellant]?"[7]  Defense counsel responded essentially that he "didn't know what he didn't know" but insisted that he was not on a "fishing expedition."[8]  Instead, he reiterated that the previously provided records of cell phone activity indicated the very strong possibility of "some manipulation . . . of information on her phone before she [gave] it to law enforcement."[9]  The defense then argued that:

> [T]his truly is a he said she said [case].  Her
> credibility is the issue in this case.  Yes, there are
> some other things that we can cross-examine her on, but
> we are entitled and should be entitled to cross-examine
> her on everything that we legally can.  And here in this
> case . . . we've got this mystery person that she['s]
> texting . . . prior to, immediately prior and slightly
> after the event.  But if you look elsewhere in this
> billing statement that number doesn't appear anywhere
> else.  Whoever this person is, I think that a fair
> inference is he or she had something to do with the

---

[5] Record at 211; Appellate Exhibit XXXI at 19.

[6] Defense counsel called the number and left a voice message, which was never returned.

[7] *Id.* at 217.

[8] *Id.* at 218.

[9] *Id.*

events of this evening. Not necessarily the alleged assault, but possibly the reason why she's there, interactions that she may have been having with [Ms. B] . . . this is the kind of . . . huge mud cloth right in the middle of our evidence that had we – if we had more time, we absolutely would have the run down. And we only . . . had this literally yesterday. It's now Friday, we have Saturday and Sunday and boom we are in trial on Monday.[10]

To this the military judge responded, "[W]hy did it take almost three months for you to sift through records to realize . . . I'm missing an enclosure here that you were supposed to be given to me, Government."[11] Civilian defense counsel responded they "did identify this issue in plenty of time to have it resolved."[12]

Although the military judge conceded that the defense concerns had "traction,"[13] he nonetheless determined that "the fact that [VAM] was texting someone . . . for the five hours prior to the event . . . does not persuade me that she's trying to cover something up. It seems to be more of a level of, none of your business, if she did delete those messages."[14] Accordingly, the military judge denied the request for a continuance, founding his ruling on the following factors:

(1) "[T]he impact of the lead trial counsel's ability to maintain this case." While recognizing the concept that "trial counsel are typically fungible[,]" the military judge held that "[t]he Court does not adopt that philosophy in more complex cases."[15]

(2) The "significant administrative concerns related to the scheduling of witnesses in addition to money. Cost to the government is not so much of a concern for this

---

[10] *Id.* at 226.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 225.

[14] *Id.* at 237.

[15] *Id.* at 233.

6

court notwithstanding [the] lean times in our government."[16]

(3) The fact that "defense has had the bulk of this discovery—albeit the one enclosure—for approximately three months.  And it took almost three months before the defense identified that missing enclosure."[17]

(4) A previously granted continuance request.  On this point the military judge stated:

> To grant another continuance at this point in time would simply allow us to kick the can forward, potentially get some AT&T records that might explain not only some missing messages in the NCIS Celebrite extract, but also allow the defense some additional time to pursue numbers they had not seen before this billing statement[.]  While understanding what the victim was doing just before the alleged incident in this case is relevant and is important to set the context, the timeline for this case, it is not so compelling to know exactly who she may have been speaking to when a number and a place seem to be limited to the moments – or the hours . . . before the alleged assault in this case. . . . We don't know what we don't know[,] [a]nd the fact is: Even if we were to find out who owned the 404 number, this is not something that could ever possibly develop into a situation that the victim in this case was trying to fabricate a story, trying to cover up some type of consensual relationship with [the appellant] for fear of that individual finding out[.] . . . [N]ot allowing additional time to pursue this particular area does not impact, in this court's mind, Lance Corporal Montalvo's ability to pursue justice and defend himself against these charges.[18] . . . [T]he bottom line for me . . . is that I understand [the defense counsel's] concerns.  I just don't see them as being enough to compel a continuance to which –

---

[16] *Id.*
[17] *Id.* at 234.

[18] *Id.* at 234-35.

when I look at the long range docket within our circuit, we are already quite busy.[19]

(5) Ample existing impeachment evidence.  The military judge ruled that "the Court believes that there's already sufficient basis in the record for many levels of impeachment of the victim."[20]

(6) Finally, the anticipated three-month delay that would be caused by a continuance due to counsel and witness schedules.

The record does not indicate whether the subpoenaed information was ever received by the Government, nor whether the identity of the person with whom VAM was texting prior to the assault was ever determined.

**Discussion**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence."  The Supreme Court has held that "this right has historically been, and remains today, the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial." *Kansas v. Ventris*, 556 U.S. 586 (2009) (citation and internal quotation marks omitted).  This right extends to the "meaningful opportunity to present a complete defense." *United States v. Gaddis*, 70 M.J. 248, 252 (C.A.A.F. 2011) (citation and internal quotation marks omitted).  Moreover, RULE FOR COURT MARTIAL 701(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), provides that "[e]ach party shall have adequate opportunity to prepare its case[.]"  R.C.M..  When necessary to prepare its case, the military judge should grant a continuance "for as long and as often as is just."  R.C.M. 906(b)(1), Discussion (citation omitted).

At trial, the appellant shoulders the burden, by a preponderance of the evidence, to show "reasonable cause" for the continuance request, *United States v. Allen,* 31 M.J. 572, 620, 623 (N.M.C.M.R. 1990), *aff'd,* 33 M.J. 209 (C.M.A. 1991), and we will reverse a military judge's decision on a continuance request only for an abuse of discretion, *United States v. Miller*, 47 M.J. 352, 358 (C.A.A.F. 1997).  There is an abuse of

---

[19] *Id.* at 236.

[20] *Id.* at 235.

discretion "where reasons or rulings of the military judge . . . deprive a party of a substantial right such as to amount to a denial of justice[.]" *Miller*, 47 M.J. at 358 (citations and internal quotation marks omitted). The propriety of granting a continuance is always fact-specific and must be decided in light of the peculiar circumstances surrounding each case. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

To determine whether the military judge abused his discretion, we consider the following factors:

> surprise, nature of any evidence involved, timeliness of the request, substitute testimony or evidence, availability of witness or evidence requested, length of continuance, prejudice to opponent, moving party received prior continuances, good faith of moving party, use of reasonable diligence by moving party, possible impact on verdict, and prior notice.

*Miller*, 47 M.J. at 358 (citation and internal quotation marks omitted).

Applying these principles and the relevant *Miller* factors to this case, we note the following:

1. *Surprise and timeliness of motion/Good faith of moving party*. Five days before trial, and apparently prior to any of the witnesses traveling to the trial site, the defense notified the military judge that the trial counsel was still working with AT&T to collect the subpoenaed information. Three days before trial, the defense was provided the bill, wherein they discovered the new evidence and immediately requested a continuance. *Other than the "late" discovery that the defense was missing (the Celebrite enclosure), discussed further below, t*he military judge stated that "the Court is not concerned in any regard with the defense's late filing."[21] Nor are we.

2. *Nature of the Evidence*. The appellant's defense strategy was that the sexual activity was consensual and that VAM's allegations were false, making a challenge to VAM's credibility the lynchpin to that defense. The information sought by the defense -- the identity of the individual with whom VAM was communicating as she sat in the appellant's room moments before the assault -- was reasonably likely to have led to the

---

[21] *Id.* at 234.

9

discovery of what VAM was discussing seconds before she claims she was assaulted. The fact that these texts were deleted from VAM's phone is sufficient to raise the inference that VAM did not want them discovered and therefore that the texts had potential evidentiary value.

3. *Substitute Testimony or Evidence.* Apart from the subpoenaed information, the defense was seeking an opportunity to discover with whom VAM was texting immediately prior to the assault and the content of those texts. The only other source of this information was VAM herself, who had previously refused to speak to the defense. In fact, in opposition to the continuance request, trial counsel argued that the defense could "cross-examine [VAM] and certainly make the inference, hey you're texting somebody; who is it and why did you delete those text[s] from your phone?"[22] However, as the eventual cross examination of VAM shows, without the source information such efforts predictably proved fruitless:

Q: Were you texting with anybody that evening?
A: Probably.

Q: If you were texting with somebody that evening, who do you think that was?
A: It could have been quite a few people.

Q: Okay, is it possible you were texting with only one person that evening?
A: I believe I was texting a few more than one person that evening.

Q: Okay, if I tell you a phone number, I just want to see if you recognize a particular number 404 area code, 655-[XXXX]?
A: I'm sure I know that number, but I don't know who it belongs to.

Q: Okay. Just as you are sitting here, you don't recognize that number?
A: Right.[23]

. . . .

---

[22] *Id.* at 224.

[23] *Id.* at 682.

10

Q: Do you recall whether or not you were texting repeatedly one person throughout that evening?
A:  I'm sure that I was, but I don't remember specifically who it was.[24]

Contrary to the Government's position that "Appellant had ample opportunity to probe VAM's contact with the '404' number and whoever else she may have been texting that night,"[25] we find this exchange devoid of impeachment value vis-à-vis the content of the texts.  We also generally find reliance upon blind cross examination a wholly inadequate substitute for either pretrial preparation or of our liberal pretrial discovery practice.[26]

Additionally, we take issue with the military judge's finding that a continuance was not required because "there's already sufficient basis in the record for many levels of impeachment of the victim."[27]  The premise of this ruling assumes the value of the sought-after evidence was no more significant than the impeachment evidence then available to the parties.  That premise is erroneously based upon speculation, for had the evidence indicated that the sexual activity between the appellant and VAM was consensual, no amount of other "impeachment" evidence would have sufficed to render this evidence cumulative.

4. *Availability of Evidence Requested.  A reasonable continuance would have given the defense a fair opportunity to discover the content of the text messages, with or without the assistance of*

---

[24] *Id.* at 690.

[25] Appellee's Answer of 28 Jan 2015 at 14.

[26] *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), App. 21, at A21-33, R.C.M. 701 Analysis ("Military discovery practice has been quite liberal . . . .  Providing broad discovery at an early stage . . . leads to better informed judgment about the merits of the case and . . . contributes substantially to the truth-finding process . . . . It is essential to the administration of military justice[.]").

[27] Record at 235.  The "many levels of impeachment" referred to by the military judge included: (1) DNA from both the appellant and from VAM's former fiancée were discovered in VAM's underwear and (2) Ms. B claimed that VAM spent time with another male between her visits to the appellant's room.  However, at trial, VAM's former fiancée testified that the last time he had intercourse with VAM was months prior to the alleged incident earlier and VAM explained that the underwear she wore to appellant's room must not have been laundered.  The defense did not attempt to impeach VAM on whether she had spent time with another male on the evening in question, and Ms. B did not testify.

*a subpoena and/or a warrant of attachment.*[28]  *Moreover,* we concur with defense counsel that this opportunity did not represent a "fishing expedition."  Instead, it may be likened to the situation wherein the defense is denied the opportunity to interview any other percipient witness who communicated with VAM moments before the assault began.  Certainly the defense would deserve the opportunity to discover what that witness observed and a failure to do so would surely be questioned.  See, *ABA Standards for Criminal Justice: Prosecution and Defense Function*, Standard 4-4.1(a) (3d ed. 1993) (defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction.)  *See also United States v. Scott,* 24 M.J. 186, 192 (C.M.A. 1987) (finding ineffective assistance of counsel when defense counsel failed to conduct adequate pretrial investigation.)

*5. Length of Continuance*.  The defense did not specify the amount of time needed, but the military judge estimated that, due to the parties' and witnesses' schedules, a delay would require a postponement of at least three months.

*6. Prejudice to Opponent*.  The Government did not complain -- and the record reveals no reason to believe -- that the Government's case would be adversely impacted by the requested continuance.  Instead, trial counsel argued only that "competing interests" weighed in favor of denying the continuance request.  This was so because the evidence was "potential impeachment and nothing more;" the defense "should have known the enclosure [was] missing back when they received it;"[29] there was already one continuance granted; VAM could be cross-examined on the missing texts; and the content of the texts was not available via subpoena.[30]  We are unpersuaded by the trial counsel's assertion that any of these "competing interests" were sufficient to justify denying this continuance request.

---

[28] R.C.M. 703(e)(2)(G).

[29] Record at 220-22.

[30] The trial counsel based this statement not upon information from the cellular provider, but upon his personal experience.  Even if true, the identity of to whom the 404 number was assigned could likely have been determined by use of a subpoena, and once known, could have led to evidence regarding the content of the texts.

The military judge then expressed concern, *sua sponte*, about the "lead trial counsel's ability to maintain this case,"[31] although the record provides no basis for this concern. Even if it did, and while we allow for the possibility that the loss of a lead trial counsel may prejudicially impact the prosecution of another case, we find nothing in the record to make us believe that would have happened here. Thus, in this case, we find no reason to depart from the well-established principle that trial counsel are generally fungible. *United States v. Royster,* 42 M.J. 488, 490 (C.A.A.F. 1995).

The military judge also expressed "significant administrative concerns related to the scheduling of witnesses[.]"[32] However, the trial counsel indicated that the witnesses had not yet begun to travel for this court-martial and, while we recognize that experience may lead the military judge to reasonably conclude that expert witnesses had busy schedules that would require shuffling if the trial was continued, the record is silent as to any actual impact.

7. *Prior Continuances.* The defense had received one continuance because of the medical unavailability of a defense witness.

8. *Reasonable Diligence by Moving Party.* The military judge found that "the defense has had the bulk of the discovery -- albeit the one enclosure -- for approximately three months. And it took almost three months before the defense identified the missing enclosure."[33] To the extent the military judge faulted the defense for the necessity to seek a continuance, he abused his discretion.

Over a month prior to trial, the defense noticed the omitted discovery, re-requested the discovery the next day, and then requested the records be subpoenaed a day after the discovery was provided. Only when the subpoenaed evidence was not provided did the trial counsel then seek the bill, which disclosed the existence of the texts in question, and only then did the Government provide the bill to the defense, on the Friday before a trial set to begin the following Monday. While we encourage review of discovery at the earliest opportunity, we also recognize that the Government could have sought out and provided the bill to the defense prior to a few days before

---

[31] *Id.* at 233.

[32] *Id.*

[33] *Id.* at 234.

13

trial, reducing the likelihood that a continuance would be necessary.

As for the subpoenaed information, the record indicates the parties were working with AT&T to obtain the information until the week before trial, at which point the defense brought the matter to the court's attention.  That said, the defense requested the information and the Government agreed to obtain it.  The Government alone wields the power to compel production of evidence, and once the evidence has been determined to be relevant and necessary, the trial counsel "shall arrange" for its production.  *See* R.C.M. 703(f)(3), (c)(2)(D), (f)(4)(b).  Under these circumstances, the failure to obtain this evidence prior to the working day before trial may not be laid at the feet of the defense.

9. *Possible Impact on the Verdict*.  Any time defense counsel raises the reasonable possibility of being unprepared for trial, a military judge must proceed cautiously.  *See United States v. Powell*, 49 M.J. 220, 225 (C.A.A.F. 1998) (citing *United States v. Browers*, 20 M.J. 356, 360 (C.M.A. 1985)).  Here, it is clear that the defense was unable to collect and analyze information provided to them on the eve of trial, namely, with whom VAM was texting immediately prior to the time she claims she was sexually assaulted, and the content of those texts.  Without the chance to collect this information, we question whether defense had an adequate opportunity to prepare the appellant's defense, and that inadequacy impacts whether the appellant received the effective assistance of counsel the Sixth Amendment affords him.

## Prejudice

Assuming the military judge abused his discretion in denying the continuance, this court specified the question of whether or not the appellant was entitled to relief only if we also found that error materially prejudiced a substantial right of the appellant's.  The Government responded in the affirmative, framing any error as "nonconstitutional" which requires that the appellant "demonstrate that the error materially prejudices the substantial rights of the accused."[34]  The appellant disagrees, claiming that when a military judge abuses his discretion in denying a continuance, "this court is not . . . required to find the error materially prejudiced a substantial right of the appellant in order to grant him

---

[34] Government Opposition to Motion for Oral Argument of 18 Mar 2015 at 3 (citation and internal quotation marks omitted).

14

relief," since "[a]n abuse of discretion based on the military judge's failure to allow additional investigation because of a government discovery violation is essentially a finding that the military judge violated the appellant's due process rights."[35]

We first note that the parties' arguments and implications that resolution of this issue ultimately turns on whether or not the appellant's discovery rights were violated are misplaced. Instead, we resolve this case on whether or not the appellant was afforded an adequate opportunity to prepare for trial.

We recognize that a military judge "has the responsibility for safeguarding both the rights of the accused and the interests of the public in the administration of criminal justice." *United States v. Vargas,* 74 M.J. 1, 8 (C.A.A.F. 2014) (citations and internal quotation marks omitted); *see also Powell v. Alabama*, 287 U.S. 45, 59 (1932) ("The prompt disposition of criminal cases is to be commended and encouraged."). However, we also acknowledge the most basic tenant that "[a]n unprepared counsel is tantamount to no counsel." *United States v. Worden*, 38 C.M.R. 284, 287 (C.M.A. 1968). In fact, in discussing the tension between the prompt administration of justice and the accused's right to prepare, the Supreme Court stated long ago that:

> [A] defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. . . . [I]t is vain to give the accused a day in court, with no opportunity to prepare for it, or to guarantee him counsel without giving the latter any opportunity to acquaint himself with the facts or law of the case.

*Powell*, 287 U.S. at 59 (citations and internal quotation marks omitted); *see also Strickland v. Washington*, 466 U.S. 668, 691 (1984) (finding in preparing a defense, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"); *Richter v. Hickman*, 578 F.3d 944, 946 (9th Cir. 2009) ("at the heart of an effective defense is an adequate investigation. Without sufficient investigation, a defense attorney, no matter how intelligent or persuasive in court, renders deficient performance and jeopardizes his client's defense.") *rev'd and remanded on other grounds sub nom Harrington v. Richter*, 562 U.S. 86 (2011); *Milton v. Morris*, 767 F.2d 1443, 1446 (9th Cir.

---

[35] Appellant's Response to Specified Issues of 4 Mar 2015 at 2-3.

1985) (positing "time to prepare . . . [is] fundamental to a meaningful right of representation") (citation omitted).  We think this principle true whether the failure to adequately prepare for trial was caused by counsel or by the denial of time in order to do so.  *See United States v. Ford*, 29 M.J. 597, 599 (A.C.M.R. 1989) ("Rulings by the military judge cannot permissibly make effective assistance of counsel impossible.")

The Government urges this court to affirm the appellant's conviction because the appellant failed to show prejudice resulting from the denial of the continuance request, arguing: "[t]o this day, Appellant has not demonstrated how more time would have allowed him to find the owner of the '404' number, the content of any of these text messages, or even a hypothesis as to why these texts would be relevant[.]"[36]  We disagree with each of the Government's points.  A continuance, coupled with the Government's subpoena power, would very likely have been sufficient to ascertain with whom VAM was texting which would then likely have led to evidence regarding the content of the texts.  Moreover, after failing to collect the evidence from AT&T that it subpoenaed, the Government now asks this court to hold the ramifications of that failure against the defense.  We decline to do so.

Applying the *Miller* factors, we conclude that the military judge abused his discretion in denying a continuance.  Not only did this issue "have traction," but the parties deserved the opportunity to investigate what VAM was communicating during the time immediately prior to an alleged assault as she sat alone in the room with her attacker.  The appellant should have been afforded the opportunity to investigate this evidence.

Under the unique circumstances of this case, and relying up on our plenary power of review as set forth in 10 U.S.C. § 866(c) to "affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved[,]" we hold that denying the defense the opportunity to investigate this evidence materially prejudiced the appellant's substantial rights by depriving him of the right to adequately prepare for trial.

---

[36] Appellee's Answer at 13.

## Conclusion

The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to an appropriate convening authority. A rehearing is authorized.

Senior Judge FISCHER and Judge MCDONALD concur.

For the Court

R.H. TROIDL
Clerk of Court

17